709 So.2d 901 (1998)
J.R. SHIPLEY, Plaintiff-Appellee,
v.
Betty SHIPLEY and Economy Fire & Casualty Insurance Company, Defendants-Appellants.
No. 30283-CA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1998.
*902 Watson, Murchison, Crews, Arthur and Corken by Steven D. Crews, Natchitoches, for Defendants-Appellants.
Michael E. Kramer, Winnsboro, for Plaintiff-Appellee.
Before MARVIN, C.J., and NORRIS and HIGHTOWER, JJ.
MARVIN, Chief Judge.
In this action a homeowner, Betty Shipley, and her insurer, appeal a judgment finding Mrs. Shipley 50 percent at fault and awarding monetary damages to Mr. Shipley, who lived separate and apart from Mrs. Shipley but was overseeing the trimming of tree limbs in her yard when he fell from a tree and broke his foot.
The issue is whether, under the factual circumstances, Mrs. Shipley breached any legal duty to her husband by telling him to show a hired worker how she wanted the tree limbs pruned.
We reverse and render judgment for appellants.

FACTS
Although living apart from his wife, J.R. Shipley sometimes assisted her in maintaining her home. In May 1994, the two discussed trimming the limbs of six small live oak trees in her front yard. J.R. explained that they "... talked about it and weshe decided, we decided thatto get somebody to trim them....." J.R. hired workers to perform the actual labor of trimming the trees, giving them a chain saw and a small hand saw attached to a lengthy pole.
Two of the trees were trimmed each day for three days. Each day, J.R. procured two different laborers, whom either or both he and Betty directed, following the same procedure each day. Betty wanted the limbs to be trimmed flush with either the trunk or the larger limbs from which they grew. From the ground Betty pointed with a long stick to each limb she wanted removed. On the third day a worker in the tree using the chain saw failed to cut the limbs as Betty wished. She then told or asked J.R. to show the worker how she wanted the branches or limbs trimmed. Betty did not tell or ask J.R. to climb the tree.
Responding to Betty's expressed dissatisfaction, J.R. climbed a ladder leaning against *903 the tree to show the worker in the tree where to saw the limbs. When J.R. stepped from the ladder onto a tree limb, his foot slipped and he fell three or four feet to the ground, fracturing his foot.
The trial court correctly found "strict" liability inapplicable, there being no defect in the ladder or the tree, but opined that Betty should bear some of the fault of J.R.'s injury.

DUTY-RISK ANALYSIS
The essential elements of a negligence case include the following inquiries:
(1) Was the conduct of which the plaintiff complains a cause-in-fact of the resulting harm?
(2) What, if any, duties were owed by the respective parties?
(3) Whether the requisite duties were breached?
(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
(5) Were actual damages sustained?

Pitre v. Louisiana Tech University, 95-1466, (La.5/10/96), 673 So.2d 585.
Assuming, but not finding Betty's "conduct" a cause in fact, we address what legal duty, if any, Betty owed to J.R. under the above circumstances. When a plaintiff relies on a general rule of law, such as La. C.C. art. 2316[[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill], the court must determine whether the rule is intended to protect that plaintiff from the particular risk of harm he suffered. This analysis considers causation, factual and legal, the source and scope of the duty urged. See Meany v. Meany, 94-0251 (La.7/5/94), 639 So.2d 229, 233.
The existence and scope of a duty depends on a case-by-case analysis of the standard of care required of each defendant under the particular circumstances. Gresham v. Davenport, 537 So.2d 1144 (La.1989).
[T]he proper test to be applied in determining a landowner's liability under articles 2315 and 2316 of the Civil Code is "`whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others,' ".... The duty of a landowner is not to insure against the possibility of an accident on his premises, but rather to act reasonably in view of the probability of injury to others. Thus the landowner is not liable for an injury resulting from a condition which should have been observed by an individual in the exercise of reasonable care or which was as obvious to a visitor as to the landowner.

Pitre v. Louisiana Tech University, supra at p. 590, citing Shelton v. Aetna Casualty & Surety Company, 334 So.2d at 410 (La.1976).
The key to a finding of no liability in cases involving issues of landowner fault is the determination that the defendant did not act unreasonably vis-a-vis the plaintiff, or cause injury to the plaintiff through the instrumentality of an unreasonably dangerous thing in his custody. Pitre, supra, at p. 591. The issue here is whether or not Betty acted unreasonably vis-a-vis J.R.
The trial court generally concluded Betty acted unreasonably toward J.R., but did not state in what specifics her words or conduct were unreasonable. The court noted that Betty asked J.R. to "show the young man how to properly trim the limbs" and that she knew that J.R. was 59 years old and not in good physical condition. During the first two days of the trimming, and sometimes responding to Betty's remarks, to show a worker in the tree how she wanted the trimming done, J.R. sometimes would climb the ladder against the tree. Apparently the trial court based its finding that Betty "shoulders some of the responsibility for plaintiff's injuries" on what it factually noted.
While we agree with the trial court that Betty, like "every person" in art. 2316, should act reasonably toward others on her property, we disagree with the finding that she acted unreasonably under the circumstances to breach that duty. Showing a worker in the tree how Betty wanted the limbs pruned is not an inherently perilous or dangerous undertaking. Betty did not direct *904 or order J.R. to climb either the ladder or onto the tree to show the worker how to prune the limbs. The manner or method by which J.R. showed or told the worker was entirely left to J.R.'s discretion. The fact that J.R. perhaps chose less than the best method to show the worker is not, in our opinion, either factually or legally, attributable to Betty's asking J.R. to show the worker how she wanted the limbs cut. Her request or precatory instruction to J.R., in any event, cannot be found inherently dangerous or unreasonable. Pitre v. Louisiana Tech University, supra.
Certainly, the risk of slipping and falling from a tree, if the person climbing in the tree does not perform the operation cautiously and carefully, is obvious, but even J.R. admitted that Betty did not actually ask him to climb the tree. J.R. chose to climb the tree because he discerned no jeopardy in doing so; indeed, he sometimes had done so without incident during the two days before. Reasonable foreseeability of injury remains a factor in associating a particular risk with a general duty. The ease of association between the duty urged and the risk of injury in this instance is nebulous at best.
The trial court premised its conclusion by citing Aguillard v. Langlois, 471 So.2d 1011 (La.App. 1st Cir.1985) and LaJaunie v. Metropolitan Property and Liability Ins. Co., 481 So.2d 1357 (La.App. 1st Cir.1985), each of which we find readily distinguishable. Negligence was not an issue in LaJaunie, thereby pretermitting the question of whether the landowners acted reasonably with respect to the plaintiff, who fell out of a tree as a result of a defective branch breaking under his weight. There was no contention that it was unreasonable to ask the plaintiff to fell the tree in question. Strict liability because of a defective thing was found. With no defect being found in the premises of Betty Shipley, J.R.'s only basis for recovery is ordinary negligence. La. C.C. art. 2316.
Although the court found the duty owed in Aguillard was one of reasonable and ordinary care, the bushhogging operation undertaken by the defendant was found to be inherently dangerous with respect to other persons on the premises, such as the plaintiff. Objects may be thrown by the blades of the bushhog to cause injury to a bystander regardless of the care taken by the operator. That defendant was aware of the dangers to bystanders from objects being thrown by the bushhog, especially when it was on the lowest setting. The defendant was therefore found to have breached his duty of ordinary care in failing to keep track of plaintiff's position on the property while undertaking an activity which posed a risk to bystanders no matter how careful the operator was in operation of the bushhog.
Here we find nothing inherently dangerous in Betty's request that J.R. "show the young man how" she wanted the trees trimmed. J.R. could have accomplished this with little, if any, risk to himself by staying on the ground or even the ladder. J.R. was in control of the decision as to the method he chose for fulfilling Betty's request and consequently the risk of injury he encountered.

CONCLUSION
We find Betty's duty to act in a reasonable and prudent manner vis-a-vis that J.R. was not breached. We need not analyze other elements of a claim based on negligence.

DECREE
We reverse and render judgment in favor of appellants dismissing the demands of plaintiff at his cost.
REVERSED AND RENDERED.