775 So.2d 84 (2000)
Charles C. PROVENZA, Plaintiff-Appellant,
v.
CENTRAL & SOUTHWEST SERVICES, INC., et al., Defendants-Appellees.
No. 34,162-CA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 2000.
Cook, Yancy, King & Galloway by Jerald R. Harper, Nicole M. Smith, Shreveport, Counsel for Appellant.
*85 Wilkinson, Carmody & Gilliam by Bobby S. Gilliam, Shreveport, Counsel for Appellees.
Before STEWART, KOSTELKA and DREW, JJ.
DREW, J.
Charles C. Provenza appealed the summary judgment granted in favor of the defendants in his action for damages allegedly arising from wrongful termination, his detrimental reliance on his employment contract, and tortious interference with his employment contract. The summary judgment dismissed Provenza's action with prejudice against the defendants: Central and South West Services, Inc. (CSWS); Southwestern Electric Power Company (SWEPCO); Waldo Zerger; Randall Moses and Curtis Carter. For the following reasons, the summary judgment in favor of the defendants is affirmed.

FACTS AND PROCEDURAL BACKGROUND

Allegations of Plaintiff's Petition
In his petition filed October 22, 1997, Provenza asserted that he became an employee of SWEPCO on July 20, 1972. In approximately August 1996, Provenza, a Senior Claims Consultant, became an employee of CSWS by virtue of an overall reorganization of CSWS and its constituent companies, including SWEPCO. In the reorganization CSWS sought to obtain greater efficiencies and planned the elimination of certain jobs and the termination of employees, called incumbents in the reorganization. Provenza alleged that due to the anticipated instability caused by the reorganization, the employer feared losing its best and most experienced employees. Therefore, CSWS offered additional terms and conditions of employment including (1) identification of the positions to be eliminated; (2) providing as much notice as possible to persons employed in affected positions so they could seek comparable employment within the company or else-where; and (3) identification of unaffected positions so those persons could be assured of job security. CSWS informed Provenza he was an incumbent in an unaffected position, so that he was guaranteed job security. The company assured incumbents in unaffected positions that they could not be displaced absent a critical business need or compelling justification by members of management. According to Provenza, he relied upon those agreements and promises to his detriment and was damaged.
Provenza further alleged that in 1996 CSWS assigned him to a team responsible for planning the Risk Management Department's portion of the reorganization. The team recommended the elimination of the position of Risk Manager which was held by four individuals, one of whom was Curtis Carter, Provenza's immediate supervisor. Carter objected to Provenza's participation on the team and the recommendation. As early as 1996 Carter began to compile a file on Provenza's activities without Provenza's knowledge. Carter published to others statements in 1996 accusing Provenza of dishonesty, including the intentional failure to report damage to company property. At his termination, Provenza learned of Carter's statements which he alleged were untrue, malicious, injurious and damaging. On information and belief, Provenza alleged that Carter communicated the false statements to Randall Moses and Waldo Zerger who agreed to terminate Provenza.
Provenza's petition asserted that on October 23, 1996, Zerger, Moses and Carter gave Provenza notice of termination effective October 28, 1996 in violation of the guarantees and assurances given by CSWS to Provenza. Because the termination occurred only two and one half days before restaffing of positions at Provenza's level had been completed, Provenza maintained he did not have adequate opportunity to find a comparable job within the company. According to Provenza, no other incumbent was terminated and he was *86 targeted for disparate treatment by Carter, Moses and Zerger who were acting in the course and scope of their employment at CSWS and/or SWEPCO. Moreover, Provenza urged that Carter, Moses and Zerger exceeded their authority and acted without justification in causing the corporate employer to breach its employment contract with Provenza.
Provenza further alleged that CSWS/SWEPCO promised employees adversely affected by the reorganization an independent and objective appeal process. On October 23, 1996, Zerger told Provenza that his position as senior claims consultant would not be restaffed due to the reorganization. On October 28, 1996, Provenza received his notice of termination stating his position was being eliminated. Within days thereafter, Provenza's prior position as senior claims consultant was filled by another employee without a college degree, as required by the company job description for that position.
According to the petition, on November 18, 1996, Provenza gave notice of his appeal. On December 12, 1996, SWEPCO sent Provenza an offer of a severance package for which he was eligible due to the reorganization and elimination of his position. At a preliminary hearing on his appeal on December 27, 1996, Provenza was informed that his termination was unrelated to the reorganization, was unrelated to his job performance and was conducted without the knowledge and approval of his supervisor, Payton Wilson or Wilson's supervisor, Frank McGilbra. On January 6, 1997 the company characterized the appeal as unresolved and to be processed through the next level of the appeal process. Provenza claimed that at a January 24, 1997 meeting, the company acknowledged Provenza was an incumbent protected from adverse employment action due to the reorganization. On February 4, 1997 the company sent correspondence to Provenza acknowledging the matter was unresolved.
His petition next stated that he then filed for unemployment benefits. On March 24, 1997, Provenza learned that the company was appealing his entitlement to unemployment. A company representative appeared at the April 1997 unemployment hearing. The appeal by the company was dismissed as untimely.
On May 19, 1997, Provenza wrote and inquired about the termination appeal. On June 11, 1997, CSWS responded that the appeals process had concluded on February 4, 1997. Provenza asserted that the appeals process was conducted in bad faith by the company and without a genuine effort to investigate Provenza's termination. Provenza maintained that the defendants' conduct was extreme, outrageous and designed to inflict emotional distress upon Provenza or that defendants knew that severe emotional distress was substantially certain to occur. Specifically, Provenza alleged he had suffered embarrassment, worry, psychological damage, loss of sleep, loss of standing in the community, loss of income, loss of retirement benefits and other damages.

Defendants' Answer
Except for admitting that Provenza was a former employee and that there had been a reorganization by CSWS, the defendants generally denied the allegations of Provenza's petition. The defendants asserted that Provenza was informed in a clear and appropriate manner that he would not retain his position. Further, there was no employment contract between Provenza and SWEPCO and/or CSWS.

Defendants' Motion for Summary Judgment
The defendants asserted that SWEPCO is a public utility providing electrical power in Shreveport/Bossier for the last 70 years. Acknowledging that Provenza was a SWEPCO employee, the defendants asserted that this action arose out of the initial removal of Provenza from his position with SWEPCO on approximately October 23, 1996, and his ultimate *87 termination on February 9, 1997. The defendants stated that Provenza never had any employment contract of any type or nature with SWEPCO. Louisiana is an at will employment state in which employers may terminate employees for any reason or no reason and employees are free to leave their employment at any time. Defendants stated that Provenza was removed from his employment due to concerns as to his credibility due to repeated failure to report automobile accidents as required by company policies. Contending there were no genuine issues of material fact, the defendants sought summary judgment in their favor, since Provenza was previously employed at SWEPCO, his employment was terminated and Provenza had no employment contract of any type or nature.
In support of their motion for summary judgment, the defendants filed the affidavit of Curtis Carter who was the manager of Risk Management at SWEPCO from 1992 until 1996 and Provenza's immediate supervisor. Provenza's position of Senior Claims Consultant had substantial responsibility including review and investigation of accidents, making reports and recommendations to management, direct work with a trust entity that funded payments of claims, and coordination with attorneys. Carter stated that safety was "of the utmost importance" to SWEPCO which required that all accidents with company vehicles be immediately reported.
According to Carter, on November 3, 1992, Provenza collided with the rear of a vehicle on Line Avenue and did not report the accident to police or SWEPCO on the day of the accident. Thereafter, there was concern about the lack of reporting and the accuracy of the reports from Provenza, who first reported the accident was a hit-and-run in a parking lot and then stated the brakes had failed. An examination of the brakes revealed them to be working properly. Provenza's performance review noted that the 1992 accident was his fourth. A February 16, 1993 memo noted that he had "displayed a serious lapse of judgment" and did not receive a merit salary increase as a result.
Carter further swore that on April 30, 1995, Provenza had another auto accident which damaged two tires and two wheels which had to be replaced. Provenza did not report the accident but the next day took a half day off, went to the garage and exchanged the damaged wheels and rims. Provenza did not bring the car in. When Carter learned about the mishap which involved Provenza hitting a pothole, he requested an accident report and Provenza promptly complied. As a result, Provenza's company car was permanently taken from him.
Further, Carter said that on April 20, 1996, Provenza drove a company van to Longview and returned the vehicle with substantial damage. Provenza denied an accident occurred, but an independent engineering report indicated the vehicle had been struck nine times on the underside with force equivalent to a blow from a sledge hammer. The engineering report concluded that the van had collided with a metal road hazard of sufficient size to cause indentation and penetration of the vehicle's frame.
Carter attested that neither he nor Provenza ever had any type of employment contract with the defendant companies, nor did any other SWEPCO employee. Finally, Carter stated that Provenza was removed from his position as Senior Claims Consultant in October 1996 and terminated in February 1997. Documentation supporting Carter's statement was attached to the affidavit.
Defendants also provided the affidavit of Ronald W. Hollis, SWEPCO's Manager of Human Resources, responsible for disciplinary matters, grievances and compensation. Hollis stated that he directly participated in the decisions to remove Provenza as Senior Claims Consultant and to terminate his employment. Because of the substantial responsibility required of a Senior *88 Claims Consultant, Hollis stated that position required credibility, responsibility and trustworthiness. In the 1996 reorganization, Senior Claims Consultants no longer had a local supervisor and had to perform all duties without direct day-to-day supervision. SWEPCO had no contract of employment with Provenza or any other employee. The 1996 Reorganization Staffing Process Reference Manual specifically stated it should not be considered a contract, was not a contract and was never intended to be a contract. Hollis attested that the fact that Provenza was in an unaffected position in no way insulated him from necessary disciplinary action including termination. Hollis reiterated Provenza's accident history and SWEPCO's requirement that all accidents be properly reported.
According to Hollis, the decision to remove Provenza was made by Zerger and concurred in by the general manager, the CSWS risk manager, and CSWS vice-president of Human Resources and the CSWS president of Energy Delivery. After Provenza was removed from his position as Senior Claims Consultant, the decision was made to allow Provenza, a long time employee, to participate in the redeployment, to seek other jobs in the company and to be eligible for severance benefits. The restaffing of the final level # 4 was completed November 11, 1996. Provenza remained on the payroll at full salary until February 8, 1997. Although SWEPCO had no obligation to do so, SWEPCO offered Provenza a severance package of some 50 weeks pay which Provenza declined. Documentation of the Restaffing Manual, the Safety Regulations and the severance package was attached to the affidavit. In addition the defendants supplied portions of depositions given by Provenza and Waldo Zerger with attachments.
Provenza opposed the motion for summary judgment with his own affidavit stating that during the four month reorganization which began in August and ended in November 1996, he was an incumbent in an unaffected position. Provenza understood that he had qualified job security and that the reorganization would be completed without his job being affected. Provenza based his understanding of job security on Q & As provided by the employer and e-mail communications between him and his immediate supervisor, Frank McGilbra. Provenza also opposed the defendants' effort to obtain a summary judgment with portions of deposition by Hollis, Zerger and himself along with attached documentation.

Trial Court's Ruling
In granting the defendants' motion for summary judgment, the trial court reviewed the evidence on which Provenza relied to support his claim of an employment contract. The trial court found nothing that showed Provenza could meet the burden of proving the existence of a contract for a specific period and concluded that plaintiffs employment was an at will relationship. The trial court concluded that none of the elements for detrimental reliance were present. The reorganization document stated it was not a contract. There was no promise, no reasonable reliance and no deterioration of Provenza's position due to reliance. Since there was no contract, there could be no tortious or intentional interference with a contract. In the judgment, Provenza's action was dismissed with prejudice.

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgments are appropriate. Summary judgments are governed by La. C.C.P. art. 966, which provides that summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of actions. If the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file show that there is no genuine issue as to a material *89 fact, then the movers are entitled to summary judgment as a matter of law. A fact is material if its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery. The burden of proof on a motion for summary judgment is on the movers. However, if the movers will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movers' burden does not require them to negate all essential elements of the adverse party's claim. The movers must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim. If the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C). Tucker v. American States Ins., 31,970 (La.App.2d Cir.9/22/99), 747 So.2d 620.
On appeal, Provenza complained that the trial court erred in granting summary judgment in favor of the defendants because genuine issues of material fact existed as to the existence, terms and conditions of the contract, as to Provenza's claims of detrimental reliance and as to Provenza's allegations of tortious interference with contractual relations.
La. C.C. art. 2747 states:
A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause.
Where the term of employment is indefinite, the employment is terminable at the will of either the employer or the employee. Absent a specific contract or agreement establishing a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reasons without incurring liability for the discharge. A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La. C.C. art. 1906. The four elements of a valid contract are: (1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose. La. C.C. arts.1918, 1927, 1966, 1971. There is no contract unless both parties are bound. Keller v. Sisters of Charity of Incarnate Word, 597 So.2d 1113, (La.App. 2d Cir.1992)
On appeal Provenza argued vigorously that the existence of an employment contract and Provenza's detrimental reliance on that contract are questions of a fact which should have been decided by a trier of fact at the trial on the merits. Provenza acknowledged that there was no single instrument from which the parties' intent could be determined. Mr. Hollis of SWEPCO stated in his deposition that during the reorganization, the company communicated to employees the process and staffing procedure though "Q & As on profs" and that one of the objectives was that incumbents in unaffected positions would have job security through the reorganization. Provenza stated that the terms of the contract were found in Q & As on e-mail, departmental meetings, "profs" and in conversations with his supervisor. Morever, Provenza stated that he never received the reorganization manual on which defendants relied that stated that neither the manual nor the staffing process should be viewed as an employment contract. Due to the foregoing, Provenza, an incumbent in an unaffected position, argued that his job could not be affected by the reorganization which began in August and ended in November 1996.
For the purposes of deciding whether the trial court correctly entered summary judgment in favor of defendants, we will accept Provenza's account of what transpired. Provenza, in brief, described defendants' bargain with him, as follows: (1) defendants would let him know if he had job security, (2) as an incumbent in an *90 unaffected position, he would not be removed as a consequence of the reorganization but only in the event of critical business need, (3) Provenza was expected to rely on those assurances and (4) Provenza was reasonable in relying on those assurances. In Provenza's view, that modified his "at will" relationship with defendants.
Even if this court were to accept, which it does not, Provenza's assertions that his at will employment was altered during reorganization, there is nothing in the record to establish that the employer could not terminate Provenza for cause. Even the Q & A on which Provenza relies clearly states that a position could be affected for a compelling business reason. Further, the e-mail cited by Provenza in his affidavit opposing the summary judgment is not in the appellate record.[1]
Since the defendants did not have the burden of proof at trial, they did not have to negate all essential elements of Provenza's claims. They had only to point out the absence of factual support for an element essential to Provenza's claim. Even if we accept all of Provenza's assertions about what he was told and not told about the reorganization process and his own job security, there is nothing in the record supporting his contention that he could not be removed from his position. Although not finding that it was a prerequisite to terminating Provenza under the circumstances, the defendants established there was a compelling business need to remove Provenza. Defendants documented Provenza's accident history and prior discipline. They provided support for their decision that Provenza should not remain in his position. The defendants attempted to give this long time employee the benefits available during the reorganization; however, they presented adequate support for their decision to terminate Provenza for cause.
Provenza provided no factual support to show that he would be able to satisfy his evidentiary burden at trial that he was under some type of employment contract that prevented his termination due to his serious infractions of the defendants' safety policies. Finding no contract pretermits consideration of the remaining issues.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed at Provenza's costs.
AFFIRMED.
NOTES
[1] The e-mail was quoted in defendant's brief as stating "The plan is not to restaff any of the claims, safety or clerk positions unless someone is moved out of the position for one reason or another. If that happens, only the vacated position will be restaffed." Defendants state in brief that the full test of the e-mail was quoted in their memo supporting the summary judgment and attached it thereto, but it is not among the attachments in the appellate record. Even if the e-mail were in the appellate record to be considered by the court, it does not assist Provenza.