McDonald, j.
 

 | ^Members of a class action suit filed against the Louisiana Lottery Corporation for breach of contract appeal the trial court’s grant of a motion for summary judgment. For the following reasons, we affirm.
 

 FACTS AND PROCEDURAL BACKGROUND
 

 In August 1994, a class action petition was filed for damages for breach of contract against the Louisiana Lottery Corporation (LLC). The class was defined as all present and former grand prize winners of the on-line lottery on or before March 23,
 
 1995
 

 [1]
 

 .
 
 Plaintiffs maintain that the LLC advertises the grand prize jackpot, and purchasers of a winning ticket are entitled to win that amount in a lump sum when claiming the prize. Instead, the LLC pays out the prize in yearly installments over 20 years, which makes the prize of considerable less value.
 

 In May 2001, Marilee Lucas was substituted as class representative. She filed a motion for partial summary judgment on the issue of liability, which the trial court denied. Judgment denying the motion was signed on July 20, 2004. Ms. Lucas had purchased a Playslip lottery ticket, where a person chooses numbers on a form provided by the LLC that contains the statement “[b]y submitting a Louisiana Lottery Lotto Playslip for processing the player agrees to abide by the rules, regulations and directives of the Louisiana Lottery Corporation.” One can also purchase
 
 *193
 
 a Quick Pick ticket, where $1.00 is given to an attendant and a lottery ticket is received. On the back of the lottery ticket is a statement that the game is subject to the rules and regulations of the LLC. However, this notice is not received until the ticket is delivered, and it is the plaintiffs’ position that the contract is formed when the dollar is given to the attendant.
 

 | :iSince Playslip lottery players are distinguishable from Quick Pick lottery players, plaintiffs filed another motion for partial summary judgment on the issue of liability with a Quick Pick ticket winner, Brian LeBlanc, as the named plaintiff. The defendants filed a peremptory exception of no cause of action and a cross motion for partial summary judgment. The matters were heard on March 17, 2008. The trial court denied the defendant’s exception of no cause of action and the plaintiffs’ motion for partial summary judgment; the defendant’s motion for partial summary judgment was granted, dismissing all of plaintiffs claims. Plaintiffs appeal the denial of their motion for summary judgment and the grant of the defendant’s motion for summary judgment. The defendant answered the appeal, alleging error by the trial court in denying its exception of no cause of action.
 

 Plaintiffs allege that the trial court erred (1) in failing to find that when plaintiff class members paid $1.00 for a Playslip lottery ticket it constituted acceptance of the LLC’s publicized offer and formed a binding contract; (2) in failing to find that when plaintiff class members paid $1.00 for a Quick Pick lottery ticket it constituted acceptance of the LLC’s publicized offer and formed a binding contract; (3) in finding that the terms of the contract between the LLC and the plaintiff class members who utilized the Quick Pick play method included the rules and regulations promulgated by the LLC, where class members were not put on notice prior to acceptance of the contract that the rules would control the payout of the jackpot proceeds over a twenty year period.
 

 Defendant alleges that the trial court erred in denying LLC’s peremptory exception of no cause of action as to those plaintiff class members who presented them lottery tickets for validation on or after May 18, 1993 because La. R.S. 47:9009(0 provides that there shall be no liability on the part of and no cause of action shall arise against the Louisiana Lottery Corporation arising out of, or in connection with, the issuance or delivery of a lottery ticket.
 

 I tLAW AND ANALYSIS
 

 Plaintiffs maintain that contract law requires the LLC to pay its advertised jackpot in a lump sum because the advertised terms of the contract between the LLC and lottery ticket winners did not disclose that the prize would be paid over a twenty year period. It was vigorously argued in the trial court, and here, that the contract was formed when the lottery ticket was purchased, at which time the purchasers of grand prize tickets expected to receive the advertised jackpot in one lump sum. Evidence was submitted to prove that the value of the jackpot is considerably less than the advertised value if received over a twenty year period. We agree that the contract was formed when the ticket was purchased; we also recognize that two million dollars received in 20 equal installments is of considerably less value than one payment of two million dollars. However, we do not find that contract law requires the result for which the plaintiffs argue.
 

 Plaintiffs maintain that the advertisements of the LLC were an offer to contract that they accepted, relying on
 
 Woods v. Morgan City Lions Club,
 
 588 So.2d 1196
 
 *194
 
 (La.App. 1st Cir.1991). In Woods, the plaintiff had participated in a bingo game sponsored by the Morgan City Lions Club that had been advertised in the newspaper. The advertisement, which was produced in its entirety in the reported case, contained specifics about various games, including a prominently advertised $10,000 jackpot, and stated “52 numbers will be called this Friday.” The plaintiff hit the jackpot on the 52nd number called. When attempting to claim her prize, she was informed that the advertisement had been in error and the Lions’ Club rules require that only 51 numbers be called. The court noted that the Lions’ Club was the party responsible for the advertisement and for insuring that it was accurate. It held that the Lions Club was obligated to pay the plaintiff the advertised jackpot, finding that the advertisement was “certain and definite enough to constitute an offer under the circumstances of this case.”
 

 |gThe advertisements by the LLC on which plaintiffs rely in this ease advertise a certain sum of money as the jackpot. The advertisement does not disclose what is necessary to win the jackpot prize; it does not contain any terms or restrictions on collecting the prize, if won. There is no dispute that the money advertised is being paid. What the plaintiffs object to is the terms under which the prize is paid. The advertisement does not contain any terms, it simply announces what the prize for the current drawing will be. We find that the advertisement here is not certain and definite enough to constitute a contractual offer.
 

 A contract is an
 
 agreement
 
 by two or more parties whereby obligations are created, modified, or extinguished. La. C.C. art.1906. The four elements of a valid contract are: (1) the parties must possess the capacity to contract; (2) the parties’ mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose.
 
 Provenza v. Central & Southwest Services, Inc.
 
 34,162 (La.App. 2nd 12/15/00), 775 So.2d 84, 85. These basic requirements for the formation of a contract are found in Title IV of the civil code. Specifically, article 1918 provides for capacity; article 1927 provides for consent; article 1966 provides that an obligation cannot exist without a lawful cause; and article 1971 provides that parties may contract for any object that is lawful, possible and determined or determinable. The first step in contract law is to determine whether a contract was formed by offer and acceptance.
 
 State v. Givens
 
 99-3518 (La.1/17/01), 776 So.2d 443, 455. The party demanding performance of a contract has the burden of proving its existence.
 
 Id.
 

 Contract law provides that an acceptance not in accordance with the terms of the offer is deemed to be a counteroffer. La. C.C. art.1943, In other words, a party to a contract may only accept the offer that is made, or substitute a different offer. To allow the plaintiffs here to impose an obligation on the defendant that was not contemplated by it violates the most basic principle of contract law, that it | fiis an agreement. In effect, the plaintiffs ask the court to create a contract with the terms they “expected.” These expectations were not improperly induced by the defendant, nor are they even reasonable considering the newspaper articles reporting that winners of million-dollar prizes receive them in 20 equal annual installments and the fact that this is the common practice in games of this nature. We find nothing in contract law or jurisprudence that would allow the court to substitute the plaintiffs’ terms for the offer made by the defendant.
 

 
 *195
 
 We find that the offer made to the public was to award a specified jackpot in accordance with its rules, as stated on the ticket. By purchasing a ticket, that offer was accepted. In this case, it is the plaintiffs who are in the best position to avoid mistakes. If ticket purchasers are unsure of any of the requirements in order to be awarded or to collect a prize, it is their responsibility to determine them before purchasing a ticket. This is not too onerous a burden; purchasers pay $1.00 for a chance to win considerably more, in the plaintiffs’ case, over a million dollars. The offer made by the LLC is non-negotiable, and the choice available to the public is to accept or decline the offer. Given the context, we find nothing unreasonable, immoral or illegal in these terms.
 

 We also find that the issue here arises out of and in connection with the delivery of the
 
 prize
 
 not the lottery ticket. Therefore, we find that La. 47:9009(0) is not applicable and no error in the judgment of the trial court denying defendant’s exception of no cause of action.
 

 Based on the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are assessed to La Bo J partnership.
 

 AFFIRMED.
 

 [1]
 

 . The class was originally defined as all present and former grand prize winners of the online lottery. However, on March 24, 1995 the advertisements of the LLC were changed to reflect that the jackpot could be paid in cash and the definition of the class was subsequently amended.